UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Newpaper, LLC,

          Plaintiff,

v.

Party City Corporation and
Amscan Holdings, Inc.,

          Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 13-1735 ADM/LIB

_____

Stanford P. Hill, Esq., and Steven P. Aggergaard, Esq., Bassford Remele, PA, Minneapolis, MN, and James M. Njus, Esq., Meyer & Njus, PA, Minneapolis, MN, on behalf of Plaintiff.

Eric L. Yaffe, Esq., and Ashley M. Bennett Ewald, Esq., Gray, Plant, Mooty, Mooty & Bennett, PA, Washington, DC, and Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On August 26, 2013, the undersigned United States District Judge heard oral argument on Defendants Party City Corporation's and Amscan Holdings, Inc.'s (collectively, "Party City") Joint Motion to Dismiss Plaintiff's Complaint [Docket No. 4], as well as Defendants' Joint Motion to Strike [Docket No. 16]. Plaintiff Newpaper, LLC ("Newpaper") opposes both motions. For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and the motion to strike is denied.

## II. BACKGROUND

Defendant Amscan Holdings, Inc. ("Amscan") designs, manufactures, and distributes party supply products. Not. of Removal [Docket No. 1] Ex. 1 (Complaint) ¶ 8. In December 2005, Amscan purchased Party City Corporation, a large party supply retail chain and one of Amscan's larger customers. Id. In 2006, Amscan also purchased Party America Corporation

("Party America"), another large party supply retailer. Id. ¶ 9. At the time, Plaintiff Newpaper and its affiliates were Party America's largest franchisee, with 25 retail stores in Minnesota, Wisconsin, Iowa, North Dakota, and Texas.

On September 24, 2007, Newpaper and its affiliates entered into a general agreement (the "Agreement") with Party City Corporation and PA Acquisition Corporation, which Amscan guaranteed.[1] Compl. Ex. A (Agreement), Ex. B (Guaranty). As part of the Agreement, Newpaper agreed to convert all of its existing Party America retail locations into Party City stores. Agreement § D. Accordingly, Newpaper agreed to terminate all of its Party America franchise agreements and execute new Party City franchise agreements corresponding to each of its stores. Id. To the extent the Agreement conflicted with the new franchise agreements, the parties agreed the Agreement would control. Id.

The Agreement conferred Newpaper the exclusive right to operate franchised stores in its region. Specifically, Party City granted "the exclusive right to execute Party City's then-current franchise agreement for the establishment and operation of franchised Party City retail party goods stores in the states of Minnesota, Iowa, North Dakota, South Dakota," and twelve Wisconsin counties bordering Minnesota and Iowa. Id. § E.1. The Agreement refers to this region as the "Territory." Id. Party City agreed it would not authorize any other person or entity to operate franchised stores in the Territory, except for those stores already in operation at the time of the Agreement. As a result, three non-Newpaper Party America stores located in Bismarck, North Dakota; Duluth, Minnesota; and Sioux Falls, South Dakota continued

---

[1] Although Newpaper and its affiliates entered into identical versions of the Agreement, Newpaper alone is a party to this action. As a result, only Newpaper, and its retail stores and contracts, are addressed by this Order.

operating.  Compl. ¶¶ 34-39.

In the Agreement, Party City reserved the right to sell its products through other channels—including the same products sold by Newpaper—through any channel of distribution, including the internet.  Agreement § E.2.  In August 2009, about two years after it reserved this right, Party City launched an internet store for the same products sold at its retail locations. Party City had previously used its website only for marketing and communication purposes, and the change in distribution scheme caused a backlash among its franchisees.  Compl. ¶¶ 23-24.  In November 2009, several franchisees sent a demand for mediation letter to Party City regarding its internet sales.  In response, Party City filed suit against the franchisees, including Newpaper, alleging tortious interference.  Id. ¶ 26.

On April 30, 2010, apparently in an effort to resolve their dispute, Newpaper and other franchisees executed an addendum to their franchise agreements that affirmed Party City's right to sell products online.[2]  Id. ¶ 27.  Exs. Supp. Mot. to Dismiss [Docket No. 8] ("Defs.' Exs.") Ex. 2 (the "Internet Addendum").  In exchange, Newpaper (and the other franchisees) would receive a share of revenue from internet sales based on the customer's location.  Internet Addendum § 2. Newpaper also agreed to accept in-store returns for sales made online.  Id. § 5.  Internet sales have steadily grown since 2009, and Newpaper alleges Party City has begun focusing its marketing and other efforts on these sales at the cost of its retail franchisees' business.[3]

---

[2] As with the Agreement, Newpaper's affiliates also executed identical versions of the Internet Addendum for their respective retail locations.  Again, because the affiliates are not party to this action, they are not addressed here.

[3] On April 11, 2011, the parties amended the Agreement to allow Party City to convert certain "Factory Card and Party Outlet" stores into Party City-owned retail stores.  Compl. Ex. A at 33-36.  Newpaper also agreed to sell its Des Moines, Iowa, location to Party City.  Because

On or about June 13, 2013, Newpaper filed this action against Party City in Hennepin County District Court.  Newpaper states four claims, alleging Party City: (1) breached the exclusivity clause of the Agreement by conducting online sales; (2) breached the Agreement by establishing "new legal relationships" with the three retail stores in Bismarck, Duluth, and Sioux Falls; (3) breached the covenant of good faith and fair dealing; and (4) converted Newpaper's property interest in the Territory by selling Party City products online.  Compl. ¶¶ 40-54.  Party City removed the Complaint to federal court on July 3, 2013, and moved to dismiss one week later.  As briefing on the motion proceeded, Party City also moved to strike several pleadings Newpaper filed in opposition to the motion.

### III.  DISCUSSION

**A.  Motion to Strike**

With its opposition to the motion to dismiss, Newpaper filed two affidavits with exhibits attached to each affidavit.  Several of these exhibits, and portions of the affidavits, reflect Newpaper's purported understanding of the Agreement and Internet Addendum.  Other documents evidence negotiations between the parties before the execution of these contracts.  See, e.g., Aff. of Michael Yaggie [Docket No. 14] Ex. 2 (emails discussing Internet Addendum terms), Ex. 3 (letter negotiating Agreement terms).

Party City moves the Court to strike these materials because they are not embraced by the Complaint.  As Party City notes, Newpaper explicitly offers these documents to prove its allegations, a purpose not allowed by Rule 12(b)(6).  See Pl.'s Opp'n [Docket No. 20]

---

this amendment does not affect the legal issues or disputed contract terms, it is not discussed further.

("Newpaper has provided affidavit testimony and a document evincing the basis for the claim."); see also Riley v. St. Louis Cnty., 153 F.3d 627, 629 (8th Cir. 1998) ("When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."). In addition, Party City argues the parol evidence rule precludes Newpaper's evidence, as Newpaper intends to use this evidence to vary the terms of unambiguous contracts. See Hruska v. Chandler Assocs., Inc., 372 N.W.2d 709, 713 (Minn. 1985). At oral argument, Newpaper stated that it did not want the Court to convert the motion to dismiss into a motion for summary judgment. Instead, Newpaper argued the Court had discretion to determine which pleadings were embraced by the Complaint, and that Newpaper's offered exhibits and affidavits were so embraced.

Party City's motion to strike will be denied. This Court has held in analogous contexts that motions to strike are not appropriate vehicles for targeting memoranda and affidavits. See, e.g., Smith v. United HealthCare Servs., Inc., No. 00-1163, 2003 WL 22047861, at *3 n.7 (D. Minn. Aug. 28, 2003); Zellner-Dion v. Wilmington Fin., Inc., No. 10-CV-2587, 2012 WL 2952251, at *1 n.1 (D. Minn. July 19, 2012) ("Moreover, given that a party can always, in its brief on the merits, simply ask the Court to disregard a document filed by the party's opponent, formal 'motions to strike' serve no purpose other than to crowd the docket and circumvent court rules limiting the number and length of memoranda.") (emphasis original).

However, Newpaper's offered materials will not be considered. The offered information is not part of the "public record" or "undisputedly authentic" in the way that a contract or prospectus filing might be. See Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997). Nor is this material

embraced by the Complaint so much as it is an attempt to prove the averments made in the materials themselves.  Additionally, as discussed below, the Court has identified no relevant ambiguity which might allow for evidence external to the Agreement, Internet Addendum, or franchise agreements to be considered in determining the intent of the parties.  As such, the parol evidence rule also precludes consideration of the submitted materials.  See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1435 (8th Cir. 1995) (stating Minnesota's parol evidence rule).  Because the claims surviving this motion are fact specific, and given the stage of the litigation, Defendants' motion to dismiss will not be converted into a motion for summary judgment.

**B.  Motion to Dismiss**

Rule 12 of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  And, as discussed above, the court may not consider matters outside the pleadings at this stage.  But, "documents necessarily embraced by the complaint are not matters outside the pleading[s]."  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).  Each of Newpaper's four claims is considered below.

**1.  Breach of Contract - Internet Exclusivity**

As discussed above, the Agreement gives Newpaper the exclusive right to establish franchised locations in the Territory.  Agreement § E.1.  Party City further agreed it would not "establish or authorize any other person or entity, other than Newpaper, to establish or operate a

Party City store within the Territory." Id. § E.2.

Although Party City granted Newpaper exclusive rights to establishing Party City stores in the Territory, Party City reserved the right to sell its products through other means. The Agreement places no restriction on:

> offering or selling products, including the same or materially the same products (regardless of percentage of inventory volume) as those offered and sold by the Newpaper franchised Party City retail goods stores to customers located within the Territory through any channel of distribution, including wholesale sales and <u>sales by or through the internet</u>, and from any premises other than a Party City-owned retail store premises located within the Territory.

Id. (emphasis added).

In April 2010, after Party City began selling its products online, the parties entered into the Internet Addendum. The Internet Addendum states Party City has "established a sales program whereby Franchisor shall sell party goods at retail via the Internet . . . and Franchisee wishes to participate in the Program." Internet Addendum, Preamble. The parties agreed Party City was "not prohibited from selling any products over the Internet, to any customers regardless of location, and in any manner whatsoever." Id. However, the Internet Addendum obligates Party City to share a portion of the revenue from all internet product sales made on the internet, if the sold products are delivered "to a location within . . . the Franchisee's Area as such term is defined in the Franchise Agreement (the 'Area')." Id. Newpaper's franchise agreements defined the scope of the "Area" as a three-mile radius around each franchised store.[4] See, e.g., Defs.' Ex.

---

[4] If the internet sales program becomes more profitable, Party City agreed to expand the scope of the Area to certain zip code boundaries, termed the "Expanded Area." Internet Addendum at §§ 1, 5. Newpaper does not allege Party City failed to properly apply the Expanded Area.

7

3 at A-1 (typical franchise agreement for one Newpaper retail location, referred to as the "Franchise Agreement").

Newpaper executed the Internet Addendum on April 30, 2010. As part of its execution, Newpaper was asked to complete a series of blank spaces in the preliminary section of the addendum, which identified the franchisee, the relevant dates, and the franchised locations at issue. See Internet Addendum, Preamble. In filling in this last item, Newpaper identified the franchised stores subject to the Internet Addendum by writing, "(The Minnesota Territory)" and then listing 21 Minnesota store locations. Newpaper also wrote "(The Iowa Territory)" and listed its sole Iowa retail location. Id. Newpaper made no changes or additions to the body of the addendum.

Newpaper offers two arguments for its breach of exclusivity claim. First, in the Complaint and in portions of its opposition, Newpaper argues Party City had no right whatsoever to establish an "internet store" that sold goods within the Territory. See Compl. ¶¶ 41-44; Pl.'s Opp'n at 13. Under this theory, Newpaper argues it had sole rights to market and operate Party City stores in the Territory, regardless of whether the store was "brick-and-mortar" or internet-based.

Second, Newpaper also argues Party City agreed in the Internet Addendum to share revenue from all internet sales made to persons within the broader "Territory," as opposed to the more narrowly-defined "Area." Newpaper bases this argument solely on its use of the terms "(The Minnesota Territory)" and "(The Iowa Territory)" in the preamble of the Internet Addendum. The use of these phrases, Newpaper argues, indicated Newpaper's intent to amend the addendum to encompass the entire Territory, and not just the three-mile Areas around each

store. At the very least, argues Newpaper, these additions create an issue of ambiguity which cannot be resolved on a motion to dismiss.

Defendants respond that both theories of breach of contract have no merit. Regarding the first, Defendants argue the plain language of the Agreement clearly sets forth Party City's right to sell goods online. Regarding the second, Defendants argue Newpaper's use of the word "Territory" when identifying its franchise locations did not alter the material terms of the Internet Addendum, and the plain meaning of the addendum limits revenue sharing to the franchise "Area" around each location.

Newpaper has failed to state a breach of contract claim regarding Party City's internet sales because the Agreement expressly allows for such sales. The Agreement unambiguously and unqualifiedly states Party City shall have the right to sell its goods "by or through the Internet." Agreement § E.2. Newpaper cites nothing in the Agreement, the Internet Addendum, or the franchise agreements that contradicts or precludes this right. On the contrary, Newpaper expressly agreed in the Internet Addendum that Party City could sell its products online, to any customer and in any manner. Internet Addendum § 1. As a result, to the extent Newpaper argues Party City has breached the Agreement by selling party goods in the Territory, this argument fails.

Newpaper's argument regarding the use of the handwritten word "Territory" in the Internet Addendum preamble is also unavailing. Newpaper is correct that Minnesota courts have held that handwritten terms in a contract will take precedence over printed terms. Danelski v. King, 314 N.W.2d 818, 820-21 (Minn. 1981). However, such handwritten terms will only create a question of fact, and thus preclude summary judgment or dismissal, if the terms create

ambiguity. See, e.g., Baker v. Best Buy Stores, LP, 812 N.W.2d 177, 180 (Minn. Ct. App. 2012). And contract language is ambiguous only if it is "reasonably susceptible to more than one interpretation." Id. (citation omitted).

Here, the use of the word "Territory" does not create ambiguity as the to the terms of the Internet Addendum. Newpaper argues the simple presence of this word makes the Addendum applicable to the entire Territory, and not just the Areas around each store. But Newpaper's own additions to the Addendum betray this logic. At the most basic level, Newpaper's proposed interpretation is unreasonable because Newpaper itself specifically listed every store subject to the Internet Addendum. These specific identifications must take precedence over any arguably broader interpretation; doing otherwise would render these identifications meaningless. Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525-26 (Minn. 1990) (holding Minnesota law requires avoiding a contract interpretation that would render a provision meaningless). The identification of every store subject to the Internet Addendum indicates an intent to apply the Addendum to each store individually, and not to the entire Territory as a single, indivisible region.

Also, the handwritten text never actually refers to the "Territory," a term carefully defined in the Agreement. Instead, the addendum refers to "(The Minnesota Territory)" and "(The Iowa Territory)"—terms without provided definitions which by the manner the writing is expressed are intended to have only parenthetical value. And these states comprise only part of Newpaper's Territory, meaning that even when construed in an unreasonably broad manner, the Internet Addendum still addresses a region smaller than the scope for which Newpaper now argues.

Finally, Newpaper's use of the word "Territory" does not make the Internet Addendum ambiguous because Newpaper left the material terms of the contract unvaried. The key provisions at issue in the Internet Addendum state that revenue sharing will be based on purchases made by customers within each store's "Area." In turn, the term "Area" shall have the same definition as provided in the applicable franchise agreement. Internet Addendum § 2. As a result, Newpaper is entitled to a portion of revenue from all internet sales made to customers within the three-mile radii around each of its franchise locations. Newpaper left these provisions wholly untouched, and did not write anything in a margin or elsewhere which might modify or vary this provision. Read plainly, the terms regarding revenue sharing for the "Area" remain intact, uncontradicted, and unambiguous. As a result, Newpaper has failed to state a claim for breach of contract under this theory.

### 2. Breach of Contract - Retail Exclusivity

Newpaper's second breach of contract claim alleges three retail Party City stores are operating in the Territory in violation of the Agreement's exclusivity provisions. The relevant exclusivity terms, however, provide an exception for already-operating stores:

> Party City shall not establish or authorize any other person or entity, other than Newpaper, to establish or operate a Party City store within the Territory, except, however, that the foregoing shall not apply to any stores currently operating in the Territory as of the date of this Agreement under the "Party City", "Party America" or "Paper Factory" tradenames.

Agreement § E.2, ¶ 1.

Newpaper alleges three non-Newpaper Party America stores were in operation at the time of the Agreement's execution (the "Excepted Stores"). Sometime after the Agreement, however, Newpaper alleges Party City formed "new legal relationship[s]" with the Excepted Stores

11

through supply agreements.  Compl. ¶ 38.  The Excepted Stores, while still operating under the "Party America" name, have functionally become Party City stores because they sell the same products and may even be listed online for marketing purposes as operating under the Party City name.  See Id. at Ex. D.  Party City responds that the plain text of § E.2 makes an allowance for the Excepted Stores to continue operating in the Territory after the Agreement, and that because these stores have operated according to this exception, no breach of contract has occurred.

Newpaper's allegations regarding the Excepted Stores fail to state a claim for breach of contract.  Nowhere does Newpaper cite the specific contract provision giving rise to this claim, and Newpaper's arguments on this point are vague.  The Court has identified two provisions in the Agreement which might potentially support Newpaper's position.  The first is Paragraph 1 of § E.2, which provides blanket exclusivity to Newpaper for the establishment and operation of Party City stores in the Territory.  But, as discussed, the exception in Paragraph 1 unambiguously indicates that the parties intended to allow the Excepted Stores to continue operating under the "Party America" name after the Agreement took effect.  Newpaper agrees that the Excepted Stores continue to operate under the "Party America" name, so no breach of this provision has occurred.  Its allegation that the Excepted Stores formed "new legal relationships" with Party City through supply agreements is also unavailing.  Paragraph 1 does not place any qualifications or limitations on the Excepted Stores, nor does the paragraph limit the kinds of party supplies these stores may sell.

As a second potential theory of breach, Newpaper seems to be alleging Party City violated Paragraph 3 of § E.2.  In Paragraph 3, Party City agreed not to "establish or franchise" a "free-standing retail store premises under the 'Party America' tradename which offers and sells

party goods and costumes which are materially the same as those offered by Newpaper." By executing new supply agreements, Newpaper may be arguing, Party City "established and/or licensed" the Excepted Stores in violation of this provision. See Pl.'s Opp'n at 6. However, read in harmony with Paragraph 1, which addresses already-existing stores, Paragraph 3 is clearly aimed at prohibiting Party City from starting or licensing new "Party America" stores in the Territory. See Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 586 (8th Cir. 2002) (holding contract provisions should be read in harmony where possible). This interpretation is further reinforced by Paragraph 3's focus on the words "establish or franchise." Both of these words indicate that the parties intended to restrict the creation of new "Party America" stores in the Territory, not limit already-existing franchises.[5] Although Newpaper broadly alleges that the Excepted Stores have terminated their "Party America" franchise agreements while nevertheless continuing to operate under the "Party America" name, Newpaper does not allege the Excepted Stores formed new franchises or otherwise started new stores. As a result, even assuming the Excepted Stores have entered into new supply agreements with Party City and have begun selling the same products as Newpaper, Newpaper has not stated a breach of contract claim.

In an attempt to buttress its claim, Newpaper also alleges the Excepted Stores are identified as Party City stores online. Newpaper alleges that despite operating under the "Party America" name, the Excepted Stores are not listed on the "Party America" website. It also

---

[5] The dictionary defines "establish" as: "To set up on a secure or permanent basis; to found (a government, an institution; in mod. use often, a house of business)." Oxford English Dictionary (Online ed. 2013). It also defines "franchise" as: "To grant a commercial franchise to (an individual or group); to grant a franchise for (a product, service, or business)." Id.

alleges a "standard Google internet search" for "Party City" in Duluth, Sioux Falls, and Bismarck (the Excepted Stores' respective locations) returns at least some results for the Excepted Stores. Newpaper presumably intends to insinuate that the Excepted Stores, or Party City itself, have begun marketing the Excepted Stores as Party City stores. But, at no point does Newpaper allege that this marketing is actually occurring, or that it is deliberate on the part of Party City. Without some allegation of an actual action-in-breach by Party City, no claim may arise. Simply attaching the results of a Google search to a complaint will not replace notice pleading requirements.

Finally, as a related theory of breach, Newpaper also alleges Party City violated the Agreement by failing to assign to Newpaper its rights of first refusal for the Excepted Stores. In the Agreement, Party City stated:

> To the extent that Party City or Party America hold any rights of first refusal which both: (i) grant either the right to purchase an existing franchised Party City or Party America store located in the Territory and owned by any non-Franchisee, and (ii) are, in Party City and Party America's sole judgment, freely assignable to Newpaper, at such time as the above described rights of first refusal become exercisable by Party City or Party America (as applicable), Party City or Party America shall offer to assign such rights to Newpaper.

Agreement § E.3 (emphasis original). Newpaper essentially alleges that instead of establishing new relationships with the Excepted Stores, Party City should have offered Newpaper its rights of first refusal. In other words, Newpaper should have had the opportunity to buy the Excepted Stores before allowing them to operate under new supply agreements. Compl. ¶ 39. Party City responds that Newpaper has failed to allege sufficient facts to state a claim for failing to assign rights of first refusal. Specifically, Newpaper failed to allege Party City: (i) did not sufficiently investigate whether Party City held any assignable rights of first refusal; and (ii) possessed rights

14

of refusal which actually became exercisable.

Newpaper has failed to allege a breach of the "right of first refusal" clause in the Agreement. For the this clause to apply, Party City itself must first hold rights of first refusal with regard to the Excepted Stores, which Newpaper would then assume through the Agreement. Newpaper has not alleged, in even a conclusory manner, that Party City had freely assignable rights of first refusal over the Excepted Stores. If it had, Party City's rights would still need to become exercisable at the time the Excepted Stores formed "new legal relationships" or entered into new supply agreements with Party City. Newpaper makes no allegations to this effect. Even assuming it had, Newpaper would necessarily be alleging that Party City formed franchise agreements with the Excepted Stores in which Party City obtained rights of first refusal against itself. For Party City to have rights of first refusal in this situation, the Excepted Stores' franchise agreements would need to grant Party City the right to purchase the Excepted Stores any time the Excepted Stores executed new agreements <u>with Party City</u>. A reasonable factfinder would not find such allegations plausible. <u>See</u> <u>Whitney v. Guys, Inc.</u>, 700 F.3d 1118, 1130 (8th Cir. 2012); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663-64 (2009) (requiring "common sense" in evaluation of claim's plausibility).

### 3. Good Faith and Fair Dealing

For its third claim, Newpaper alleges Party City is in breach of the covenant of good faith and fair dealing in four ways: (1) Party City forces Newpaper to accept customer returns for merchandise purchased online; (2) Party City uses Newpaper's contributions to the franchise "Ad Fund" to promote the Party City website, and thus deprive Newpaper of business; (3) Party City forces Newpaper to purchase increasingly large percentages of Amscan products while

denying Newpaper the ability to purchase products from other distributors; and (4) Party City underprices Newpaper's retail sales through its online store, which also forces Newpaper to match online pricing and coupons and further reduce profit margins. Compl. ¶ 53. Newpaper alleges that these actions violate both the implied covenant of good faith and fair dealing, as well as the express covenant stated in the Agreement.[6] See Agreement § H.12.

In Minnesota law, the covenant of good faith and fair dealing requires that "one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502-03 (8th Cir. 2004) (citation omitted). Good faith performance "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 (1981). Among the types of bad faith which might violate the covenant are "evasion of the spirit of the bargain and abuse of a power to specify terms." White Stone Partners, LP v. Piper Jaffray Cos., Inc., 978 F. Supp. 878, 880-81 (D. Minn. 1997) (citing Restatement (Second) of Contracts § 205 cmt. d). The covenant of good faith and fair dealing does not impose obligations beyond the scope of the contract, and it will not limit a party's "right to act in accordance with the bargained-for terms of the agreement." Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 671 (8th Cir. 2012)

---

[6] Newpaper attempts to distinguish between express and implied covenants of good faith and fair dealing. Neither Newpaper nor Minnesota case law indicate how an express covenant should be treated differently from an implied covenant, if at all. The presence of an express covenant of good faith and fair dealing usually ensures that the covenant exists between the parties, because the implied covenant does not automatically apply in some situations. See Poff v. W. Nat. Mut. Ins. Co., 13 F.3d 1189, 1191-92 (8th Cir. 1994). In this case, no dispute is raised over the covenant's existence in the contracts at issue.

(citation omitted).

As pled, three of Newpaper's allegations regarding good faith and fair dealing fail to state a claim. First, regarding returns of online merchandise, Newpaper expressly and unambiguously agreed to accept customer returns of products purchased through Party City's website. Internet Addendum § 5 ("Franchisee shall accept in-store returns for product sales made through the Program . . . ."). Because a contract between the parties expressly allows the conduct complained of, a claim for the breach of the covenant of good faith and fair dealing cannot stand. In its briefing, Newpaper attempts to amend its allegation by arguing Party City has failed to properly compensate Newpaper for online returns. Such amendment is improper. See, e.g., Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 959 (D. Minn. 2000) ("When considering a motion to dismiss, the Court looks only to the factual allegations in the complaint. Any allegations made in subsequent legal memoranda cannot correct inadequacies within a complaint.").

Second, Newpaper's allegation regarding improper use of the Ad Fund also fails to state a claim. Newpaper alleges Party City has begun using franchisees' contributions to the Ad Fund for the promotion of the Party City online store, which in turn deprives Newpaper of retail sales. The Franchise Agreement specifically states that contributions to the Ad Fund will be used "for the purpose of regional and national advertising and marketing of the Party City System." Franchise Agreement § 5.3. The "Party City System" is defined as the Party City franchise system, which includes retail store designs, franchise marks, and various other assets. Id. at Preamble. As part of promoting this system, Party City is indeed entitled to use proceeds from the Ad Fund to build and maintain its website, as Party City argues. See Id. § 5.3. However, the

Franchise Agreement states that beyond the costs of promoting the franchise system, the Ad Fund "shall not otherwise inure to the benefit of Franchisor."  Id.  Assuming Newpaper's allegations are true, Party City has used Ad Fund monies to promote the sale of products through its own website—and thus for its own benefit—at the expense of sales through franchised retail stores.  But, because this conduct is expressly governed by the contract itself, it would sound under a breach of contract theory, and not as a breach of the covenant of good faith and fair dealing.  See Nomeco Bldg. Specialties, Inc. v. Pella Corp., 184 F.R.D. 609, 611 (D. Minn. 1999) ("[A] claim for breach of an implied covenant of good faith and fair dealing implicitly assumes that the parties did not expressly articulate the covenant allegedly breached.").  The allegation of a breach of an express covenant of good faith and fair dealing, as opposed to an implied covenant, does not alter this outcome.  The covenant of good faith and fair dealing fills in gaps between contract provisions; it does not replace them.  See Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 942 (8th Cir. 2002).

Third, Newpaper's vague allegations regarding the approval of other suppliers also fails.  Newpaper alleges, in curiously circumspect language, that Party City has used "direct and indirect" means to force Newpaper to sell primarily Amscan products.  Compl. ¶ 53(4).  Assuming that this is a harm, it is nevertheless governed by the franchise agreements between the parties.  If Newpaper wished to sell additional products or obtain products from other suppliers, it agreed to seek written approval from Party City to do so.  See Franchise Agreement §§ 6.3, 6.5.  Party City agreed, in turn, not to unreasonably deny such approval.  Id. §§ 6.3, 6.5.  Nowhere in the Complaint does Newpaper allege that it sought written permission for alternative products or suppliers.  Nor does Newpaper allege Party City unreasonably denied such

18

permission. Again, even assuming Newpaper had so alleged, the franchise agreements clearly address this situation, making the claim at issue a potential breach of contract, not a breach of the covenant of good faith and fair dealing.

In its fourth and final theory of breach of the covenant of good faith and fair dealing, Newpaper's allegations regarding underpricing by Party City sufficiently states a claim for which relief may be granted. Newpaper alleges Party City has priced the same merchandise at lower prices online, thereby forcing Newpaper to sell its own merchandise at lower prices due to customer demand. Assuming this is true, Party City may be using its website, and its own products, to compete against franchisees, who are also largely buying and then selling the same products. Such competition could amount to an evasion of the spirit of the bargain, and potentially an abuse of Party City's discretion to set terms under the Franchise Agreement. See, e.g., Stillwell v. RadioShack Corp., 676 F. Supp. 2d 962, 976-77 (S.D. Cal. 2009) ("While the franchise agreement does not guarantee any particular profit margin, [the defendant franchisor] undercuts the basic structure of the franchise relationship by giving preferential pricing to consumers."). Newpaper's claim for breach of the covenant of good faith and fair dealing will survive on this theory only.

### 4. Conversion

For its fourth and final claim, Newpaper alleges it possesses a property interest in the Territory, and that Party City's sale of goods through its online store amounts to a conversion of this interest. This claim fails. Newpaper does not indicate how the Agreement created a property interest in the Territory. Newpaper possesses a contract right to exclusivity in the establishment and operation of retail Party City stores in the Territory. Even if this very specific

contractual right created a property interest, Party City is entitled to sell goods online without breaching any of Newpaper's bargained-for rights, as discussed above.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 4] is **GRANTED** in part and **DENIED** in part.  Counts 1 and 4 of the Complaint are **DISMISSED WITH PREJUDICE.**  Count 2 of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

2. Defendants' Motion to Strike Pleadings [Docket No. 16] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 25, 2013.