UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Newpaper, LLC,

        Plaintiff,

v.

Party City Corporation and
Amscan Holdings, Inc.,

        Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 13-1735 ADM/LIB

_____

Stanford P. Hill, Esq., and Steven P. Aggergaard, Esq., Bassford Remele, PA, Minneapolis, MN, and James M. Njus, Esq., Meyer & Njus, PA, Minneapolis, MN, on behalf of Plaintiff.

Eric L. Yaffe, Esq., Justin L. Sallis, Esq., and Ashley Bennett Ewald, Esq., Gray, Plant, Mooty, Mooty & Bennett, PA, Washington, DC, and Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On April 15, 2014, the undersigned United States District Judge heard oral argument on Defendants Party City Corporation ("Party City") and Amscan Holdings, Inc.'s ("Amscan") Partial Motion to Dismiss Plaintiff's Amended and Second Supplemental Complaint (the "Second Amended Complaint") [Docket No. 51]. Plaintiff Newpaper, LLC ("Newpaper") opposes the motion. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

The alleged facts underlying this dispute have been discussed at length by the Court in its previous order. Order, Sept. 25, 2013 [Docket No. 29]; Newpaper, LLC v. Party City Corp., No. 13-1735, 2013 WL 5406722 (D. Minn. Sept. 25, 2013). In short, Newpaper and its affiliates

own 26 Party City franchise stores, primarily in the Midwest.[1]  2d Am. Compl. [Docket No. 50] ("Compl.") ¶ 1.  Defendant Party City owns or franchises more than 800 party supply stores nationwide.  Id. ¶ 7.  Defendant Amscan designs, manufactures, and distributes party goods, and sells a significant portion of its products to Party City, which it acquired in 2005.  Id.  ¶ 10.  Amscan also acquired Party America Corporation in 2006, and Factory Card & Party Outlet in 2007, making Amscan the largest party goods retailer in the country.  Id. ¶ 11.

On September 24, 2007, Newpaper executed a franchise agreement with Party City (the "Franchise Agreement").  Defs.' Mem. Supp. Partial Mot. to Dismiss [Docket No. 56] ("Defs.' Mem.") Ex. 2.  Newpaper and its affiliates also entered into a general agreement (the "Agreement") with Party City and PA Acquisition Corporation, which Amscan guaranteed.  Compl. Exs. A (Agreement), B (Guaranty).  In the Agreement, Newpaper agreed to convert its existing Party America stores into Party City stores.  In return, Newpaper and its affiliates received territorial exclusivity in Minnesota, Iowa, North Dakota, South Dakota, and certain counties in Wisconsin (the "Territory").  See id. ¶ 16.

On April 30, 2010, Newpaper executed an addendum to the Franchise Agreement (the "Internet Addendum").  Defs.' Mem. Ex. 3.  In the Internet Addendum, Newpaper agreed Party City was entitled to sell party products over the internet.  Newpaper also agreed to allow in-store returns of goods purchased online.  In exchange, Newpaper received a share of revenue from online sales based on a formula.  Id.

On June 13, 2013, Newpaper filed this action against Defendants, alleging breach of

---

[1]  As noted in the Court's September 25, 2013 Order, Newpaper's affiliates are not parties to this action.  The present Order, and this action as a whole, concern allegations made by Newpaper alone.

contract claims, a breach of the covenant of good faith and fair dealing, and conversion. Defendants moved to dismiss, and the Court granted the motion in part by dismissing two counts with prejudice and one count without prejudice.  Order, Sept. 25, 2013.

On October 29, 2013, Newpaper filed a "Supplemental Complaint" [Docket No. 40].  On January 29, 2014, Newpaper filed the Second Amended Complaint, which incorporates a "Second Supplemental Complaint," and alleges six counts: (1) breach of the Agreement's provisions regarding Halloween stores; (2) breach of the territorial exclusivity clauses in the Agreement; (3) breach of the Internet Addendum; (4) breach of the covenant of good faith and fair dealing; (5) violations of the Minnesota Franchise Act; and (6) promissory estoppel.  Compl. ¶¶ 57-92.

### III.  DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). The court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  And, as discussed above, the court may not consider matters outside the pleadings at this stage.  But, "documents necessarily embraced by the complaint are not matters outside the pleading[s]."  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

Defendants argue that despite the six labeled counts in the Second Amended Complaint, Newpaper actually alleges approximately 31 theories of liability.  As a result, Defendants'

3

motion to dismiss focuses on specific theories, as opposed to counts. Defendants move to dismiss the entire Second Amended Complaint, except for five theories of liability: (1) breach of the Halloween stores provision in the Agreement, Compl. ¶ 59; (2) violation of the Minnesota Franchise Act, id. ¶ 84(2)(d); (3) breach of the Internet Addendum by failing to properly share revenue, id. ¶ 75; (4) breach of the covenant of good faith and fair dealing by underpricing products, id. ¶ 80(2); and (5) breach of the covenant of good faith and fair dealing for failure to ship advertised products, id. ¶ 80(4). See Defs.' Mem. at 6-7. Because these five theories are agreed to allege plausible claims for relief, the discussion below addresses only the remaining claims.[2]

**B. Breach of Contract Allegations**

   **1. Online Sales**

In the Second Amended Complaint, Newpaper alleges Defendants violated the territorial exclusivity provision of the Agreement by selling party products on the website "www.halloweencity.com." See Agreement § E. Section E grants Newpaper the exclusive right to establish and operate Party City franchise stores in the Territory. Id. This section also prohibits Defendants from establishing or franchising within the Territory "a temporary retail Halloween store premises" or "any store premises where the sales of Halloween related merchandise comprise a majority of the annual sales (a 'Halloween Store')." Id. § E.2. Newpaper alleges that Defendants' sales through "www.halloweencity.com" constitute a violation of the prohibition against "Halloween Stores" in the Territory.

---

[2] The analysis is organized toward an effort to promote efficiency and clarity. While each specific allegation may not be addressed expressly herein, the Court has reviewed and considered each operative theory of liability.

Newpaper's allegations ignore both the language of key contracts as well as the Court's prior Order.  Newpaper is correct that the Agreement prohibits Party City from operating Halloween Stores in the Territory.  But the language of the Agreement emphasizes that this prohibition addresses physical stores: the Agreement contemplates the sale of Halloween merchandise from "store premises."  Agreement § E.2.  The word "premises" narrows the restriction to brick-and-mortar store sales.  Even more clearly, Newpaper expressly agreed that the exclusivity provision did not restrict Party City from:

> offering or selling products, including the same or materially the same products (regardless of percentage of inventory volume) as those offered and sold by the Newpaper franchised Party City retail goods stores to customers located within the Territory through any channel of distribution, including wholesale sales and <u>sales by or through the internet</u>, and from any premises other than a Party City-owned retail store premises located within the Territory.

Agreement § E.2 (emphasis added).  The Agreement states that for purposes of the exclusivity provision, the term "Party City" includes Party City and its affiliates, and Newpaper does not dispute that "Halloween City" is an affiliate.  Newpaper further agreed in the Internet Addendum that Party City was "not prohibited from selling any products over the Internet, to any customers regardless of location, and in any manner whatsoever."  Internet Addendum § 1.  Newpaper attempts to avoid the application of clear contract terms by restating many of the same arguments it made previously.  And, for the same reasons stated in the prior Order, Newpaper's arguments again fail.  <u>See</u> Order, Sept. 25, 2013 at 6-11.

**2. Party America Stores**

In the Agreement, Defendants agreed that they would not establish new Party City stores in the Territory, nor authorize anyone other than Newpaper to do so.  However, Defendants

carved out an exception for any "Party City," "Party America," or "Paper Factory" stores already operating in the Territory. Agreement § E.2. At the time the parties executed the Agreement, three non-Newpaper "Party America" stores operated in the Territory (the "Excepted Stores"). In its original complaint, Newpaper alleged that Defendants, under the guise of supply agreements, had entered into "new legal relationship[s]" with the Excepted Stores. Not. of Removal [Docket No. 1] Ex. 1 ¶ 38. The Court dismissed this claim in the September 25, 2013 Order, finding Newpaper had not alleged that Defendants had established new stores in the Territory.

In its Second Amended Complaint, Newpaper makes the same, previously-dismissed allegations regarding the Excepted Stores. As before, Newpaper alleges Party City formed new relationships with the Excepted Stores, and that these stores are functionally operating under the Party City name. Specifically, Newpaper alleges the Excepted Stores sell many of the same products, have similar layouts, and use the same fixtures as Newpaper's own stores. Compl. ¶¶ 42-43. Newpaper also replaces its previous allegations about marketing the Excepted Stores as "Party City" stores on Google.com with allegations about marketing on Yellowpages.com. Id. But Newpaper does not plausibly allege that Defendants have established new Party City stores in the Territory. The very purpose of creating an exception for the Excepted Stores was to allow these stores to continue operating despite Newpaper's territorial exclusivity. As before, even if Party City formed new supply agreements with the Excepted Stores, Newpaper has not alleged an actual breach of contract.

### 3. Return of Online Purchases

In the Second Amended Complaint, Newpaper alleges two theories of liability in

6

connection with the in-store return of products purchased by customers online.

First, Newpaper alleges it is "forced" to accept returns of seasonal goods sold online, which lose their value after the season has passed. Compl. ¶ 73. Under the Internet Addendum, a customer may purchase an item online and then return the item to a Newpaper store, for a refund paid by Newpaper. Internet Addendum § 5. Newpaper may then return these items to Defendants twice per year in cartons totaling at least $100 in goods, as shown by return receipts or current retail value. Id. Newpaper alleges these terms force it to hold seasonal goods long after the season has passed and the products have fallen "out of date." Compl. ¶ 73. As Defendants argue, these allegations do not state a theory of breach of contract so much as express disappointment with the Internet Addendum's terms. For online returns, the Internet Addendum entitles Newpaper to a credit for the "net amount of any such return in excess of the inventory cost" of the sold goods. Internet Addendum § 5. Newpaper does not allege Party City violated this provision by failing to credit such amounts.

Second, Newpaper alleges Defendants have failed to reimburse the cost of shipping "web-only" products, or products only available for sale online, to Defendants' distribution center. Instead of alleging a breach of contract, Newpaper claims Defendants have failed to abide by the terms of an April 15, 2010 email, in which Defendants enclosed the Internet Addendum and allegedly promised to cover all return costs. Compl. ¶ 74, Ex. D. In the email, Defendants wrote they would "assume the costs associated with the return of web-only items to the Naperville distribution center subject to reasonable efforts to preserve efficiency as outlined in the attached addendum." Id. This theory fails as a matter of law. In Minnesota, parol evidence may not "vary, contradict, or alter" a written contract. Hruska v. Chandler Assocs.,

Inc., 372 N.W.2d 709, 713 (Minn. 1985). The Internet Addendum provides the only mechanism by which Newpaper may return "web-only" items, and Newpaper does not allege a violation of these terms, or demonstrate how these terms are ambiguous. Tellingly, the April 15, 2010 email itself defers to the written contract. Compl. Ex. D.

**C. Good Faith and Fair Dealing Claims**

    **1. Development of Halloween City**

Newpaper alleges Defendants have breached the covenant of good faith and fair dealing by using franchise fees designated for Party City advertising ("Ad Fund" fees) for Halloween City's benefit. Newpaper claims Defendants have operated affiliate websites "www.partyamerica.com" and "www.halloweencity.com" using the same "servers, registrant, and administrators" as "www.partycity.com." Am. Compl. ¶ 80(3). Thus, Newpaper alleges, Party City has used funds paid by Newpaper to further internet sales of competing brands.

What Newpaper fails to allege in the Second Amended Complaint, however, is how this alleged misuse of the Ad Fund amounts to a breach of the covenant of good faith and fair dealing. The covenant of good faith and fair dealing prohibits one party to a contract from thwarting the other party's rights under the contract. Thus, a party may breach the covenant by, for example, "wrongfully repudiating a contract," "avoiding performance by affirmatively blocking the happening of a condition precedent," or "refusing to allow a party to perform unless the performing party waived other contractual rights." Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 671 (8th Cir. 2012) (quotations and citations omitted). Newpaper's amended allegations regarding the Ad Fund do not allege bad faith or a frustration of purpose: the allegations, if true, allege a breach of contract. A breach of contract and a breach of the

covenant of good faith and fair dealing, while closely related, are qualitatively different.  See In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 503 (Minn. 1995) ("[A] claim for breach of an implied covenant of good faith and fair dealing implicitly assumes that the parties did not expressly articulate the covenant allegedly breached.").  As defined by Minnesota law, Newpaper has not alleged a breach of the covenant.

It in its response memorandum, Newpaper attempts to broaden its position by arguing that Defendants' very development of a competing brand using the same party products constitutes a breach of the covenant.  This allegation fails to state a claim for which relief may be granted, because the implied covenant of good faith and fair dealing does not create extra-contractual obligations.  The implied covenant requires that "one party not unjustifiably hinder the other party's performance of the contract," but it "does not extend to actions beyond the scope of the underlying contract."  Id.  (quotation omitted).  Put another way, the covenant "serves only to enforce existing contractual duties, and not to create new ones."  Watkins Inc. v. Chilkoot Distrib., Inc., 719 F.3d 987, 994 (8th Cir. 2013) (citation omitted).  Newpaper cites no provision in any of the contracts at issue which prohibits Defendants from developing other brands, franchises, or stores, nor does Newpaper plausibly allege how the development of a separate brand has frustrated the purpose of the Franchise Agreement.  To the extent Newpaper alleges Defendants have forced it to unfairly compete with Halloween City through the pricing of goods or similar strategies, those facts are relevant to Newpaper's underpricing claim, which has already survived dismissal.  See Order, Sept. 25, 2013, at 18-19.

**2.  Product and Supplier Requirements**

Next, Newpaper alleges Defendants have violated the covenant of good faith and fair

dealing by "imposing a 'vertical integration' model," which unfairly limits Newpaper in terms of the products it may sell. See Compl. ¶¶ 55-56, 80(4). This theory of liability fails as a matter of law.

Newpaper alleges Defendants have failed to offer "new and/or improved" products until older products are sold, but Newpaper fails to identify any contractual obligation to offer new products. See id. ¶ 80(4). As discussed above, the covenant of good faith and fair dealing only enforces existing contractual obligations; it does not create new ones. See Watkins Inc., 719 F.3d at 994.

Further, Newpaper's allegations regarding the increased supply of Amscan products do not state a cause of action. In the past, Newpaper alleges, Party City negotiated for lower wholesale prices from a variety of party product suppliers, and then offered this variety of products to Newpaper.[3] At the time, only 25% of products offered by Party City were made by Amscan. More recently, Party City increased its volume of Amscan products to 60%, and began offering Amscan and third-party products through "Amscan Bypass," a vendor established by Defendants. Compl. ¶ 56. Through this narrowing of choices, Newpaper alleges Defendants have limited its ability to offer third-party products to customers, because Newpaper primarily relies on Defendants for wholesale purchasing. Id. These allegations fail to state a claim because Newpaper does not identify any contractual obligation on the part of Defendants to offer

---

[3] In its opposition memorandum, Newpaper attempts to expand its allegations by claiming Defendants have used their discretion to dictate franchise "standards and specifications," including store equipment, fixtures, and layout, to limit the amount of shelf space Newpaper may use for third-party products. See Franchise Agreement § 6.2 ("Standards and Specifications"). Newpaper did not make these allegations in the Second Amended Complaint, and they are not considered here.

a certain amount of third-party products, or to offer them in a certain manner of sale. The covenant of good faith and fair dealing cannot create this obligation where the contracts are silent. See Watkins Inc., 719 F.3d at 994.

In a related claim, Newpaper alleges Defendants have made it unreasonably difficult for Newpaper to obtain approval for new products or vendors; this allegation also fails. Under the Franchise Agreement, Newpaper must seek Defendants' approval before offering any new products or purchasing wholesale products from new third-party suppliers. Franchise Agreement §§ 6.3, 6.5. However, Newpaper never alleges that it attempted to seek product or vendor approval and that Defendants unreasonably withheld or denied the request. Newpaper's claim in this regard is speculative; no actual abuse of discretion or frustration of purpose has yet occurred. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). As a result, this theory of liability is also dismissed.

### 3. Development of Franchise System

Newpaper's allegation that Defendants have stopped granting new Party City franchises or are otherwise "ceasing franchisee development efforts" is not a claim for which relief may be granted. Newpaper identifies no contractual provision requiring Defendants to expand their franchise system, and to impose such a requirement on Defendants under the guise of the covenant of good faith and fair dealing would be precisely the sort of duty-creation prohibited by Minnesota law. See Burnette Techno-Metrics, Inc. v. TSI, Inc., 44 F.3d 641, 643 (8th Cir. 1994) (holding the covenant of good faith and fair dealing does not limit a party's right to act in accordance with the bargained-for terms of the agreement).

**D. Minnesota Franchise Act Claims**

In addition to its contractual and common law claims, Newpaper alleges several violations of the Minnesota Franchise Act ("MFA"). In relevant part, the MFA prohibits franchisors from engaging in "any unfair or inequitable practice," as those terms are defined in rules promulgated by the Minnesota Commissioner of Commerce. Minn. Stat. § 80C.14, subd. 1. The Commissioner, in turn, has set forth rules prohibiting specific types of conduct as "unfair and inequitable." See Minn. R. 2860.4400. The MFA also has an "anti-waiver" provision that voids any contractual term attempting to circumvent compliance with the Act. Minn. Stat. § 80C.21.

**1. Discrimination**

For its first MFA claim, Newpaper alleges Defendants violated Minn. Rule § 2860.4400(B) by discriminating against Newpaper stores in favor of Excepted Stores. Compl. ¶ 84(1). Newpaper alleges that instead of forming or continuing franchise agreements with the Excepted Stores, Defendants terminated the Excepted Stores' Party America franchises. Defendants then offered "supply agreements" by which the Excepted Stores gained the benefits of operating Party City stores without having to pay the related Ad Fund, advertising, or royalty fees. Id. Defendants concede that they terminated the Excepted Stores' franchise agreements and executed new supply agreements with the stores. As a result, Defendants argue the Excepted Stores are no longer franchises, and do not fall under the purview of the MFA.

Newpaper has sufficiently alleged a violation of the MFA in connection with the Excepted Stores. Regardless of its label, an agreement may establish a franchise relationship under the MFA, provided the relationship satisfies the statutory elements. See Minn. Stat. §

80C.01, subd. 4(a); see Pac. Equip. & Irrigation., Inc. v. Toro Co., 519 N.W.2d 911, 918 (Minn. Ct. App. 1994) (declining to grant injunction where "parties legitimately dispute whether a product distributor is actually a franchisee under the Minnesota Franchise Act"); Chase Manhattan Bank, N.A. v. Clusiau Sales & Rental, Inc., 308 N.W.2d 480, 492-93 (Minn. 1981) (finding dealership agreement was a franchise within meaning of MFA). Newpaper has plausibly alleged that the supply agreements have allowed the Excepted Stores to continue a franchise relationship with Defendants by another name. Taking those allegations as true, Newpaper has also plausibly alleged that the Excepted Stores receive more favorable treatment as compared to Newpaper.[4] Thus, Newpaper has alleged a viable claim for discrimination under the MFA.

  Defendants argue that even if the Excepted Stores constitute franchises, these stores belong to a different system altogether: the "Party America" system. This argument may have merit, but is premature at this stage of litigation. The evidence may later demonstrate that the Excepted Stores do not have franchise relationships with Defendants, or that the Excepted Stores operate under a separate "Party America" franchise system. In either case, Newpaper's MFA discrimination claim would necessarily fail. At this stage, however, Newpaper plausibly alleges that despite the "Party America" name, Defendants have deliberately advertised the Excepted Stores using "Party City" trademarks. See, e.g., Compl. ¶¶ 44-45. Newpaper also alleges Defendants have offered precisely the same products, store designs, and other benefits to the

---

[4] The terms of the Agreement expressly allow for the continued operation of the Excepted Stores. At issue under the MFA claim, however, is whether the Excepted Stores functionally operate as Party City franchisees, and if so, whether they receive unfairly favorable treatment.

Excepted Stores as they have to Party City franchisees.  Id. ¶¶ 41, 43.  The gravamen of Newpaper's claim is that Defendants have circumvented the MFA's protections by operating Party City stores under a different name, using agreements designed to avoid the word "franchise."  Taken as true, these allegations support a claim for discrimination.

### 2.  Unlawful Competition

For its second MFA theory of liability, Newpaper claims Defendants engaged in unlawful competition.  Minn. Rule 2860.4400(C) states it shall be unfair and inequitable for any person to compete with a franchisee in an exclusive territory "if the terms of the franchise agreement provide that an exclusive territory has been specifically granted to a franchisee."  Newpaper argues that Defendants have violated this rule in four ways: (1) by selling products online; (2) by allowing the Excepted Stores to continue operating in the Territory; (3) by requiring Newpaper to install e-commerce kiosks in its stores, which facilitate online sales; and (4) by offering "web-only" items.  Compl. ¶ 84(2).  None of these alleged violations state a claim upon which relief may be granted.

The first two alleged violations fail for the reasons already discussed.  The Agreement conferred an exclusive territory to Newpaper subject to specific exceptions.  Defendants' sale of products online, as well as the operation of the Excepted Stores, fall under these exceptions.

The third alleged violation, regarding in-store kiosks, also does not state a claim.  In the Franchise Agreement, Defendants reserved the right to control what equipment and fixtures Newpaper would have in its stores.  Franchise Agreement § 6.2(A).  The Internet Addendum broadly allowed Defendants to begin selling goods online "in any manner whatsoever," and expressly contemplated sharing the revenue of goods sold "through in-store ordering."  Internet

Addendum § 2.  Newpaper does not allege Defendants have failed to share profits in the manner outlined by the Internet Addendum, nor does Newpaper demonstrate how the use of in-store kiosks constitutes a violation of the Territory, as that term was defined by the parties.

Newpaper's fourth alleged theory of unlawful competition, regarding "web-only" products sold on the internet, fails to state a claim.  Newpaper identifies no contractual provision prohibiting Defendants' sale of products online, even when some of those products are not offered to Newpaper.  On the contrary, the Agreement states Defendants may offer or sell "any products" to customers "by or through the Internet."  Agreement § E.2.  Given this language, the sale of products online falls under an agreed-upon exception to the exclusive territory granted to Newpaper.

As a related consideration, although the MFA prohibits "unfair or inequitable conduct" it does so only as such conduct is defined by the Commissioner of Commerce:

> No person, whether by means of a term or condition of a franchise or otherwise, shall engage in any unfair or inequitable practice <u>in contravention of such rules as the commissioner may adopt</u> defining as to franchises the words "unfair and inequitable."

Minn. Stat. § 80C.14, subd. 1 (emphasis added).  Newpaper may be frustrated with Defendants' sale of exclusive products online, and may even legitimately view such sales as unfair.  But the MFA does not prohibit conduct according to general notions of fairness, and Rule 2860.4400(C) only enforces territorial exclusivity to the extent defined by the parties.  In this case, Newpaper expressly agreed to allow Defendants to sell products over the internet.

### 3. Unreasonable Standards of Conduct

Newpaper alleges Defendants violated Minn. Rule 2860.4400(G), which states a person engages in unfair and inequitable conduct when they "impose on a franchisee by contract or rule,

whether written or oral, any standard of conduct that is unreasonable." Guidance regarding the "standard of conduct" provision in Rule 2840.4400(G) is limited. See, e.g., Klosek v. Am. Express Co., No. 08-426, 2008 WL 4057534, at *22 (D. Minn. Aug. 26, 2008) (noting a "dearth of authority on the meaning of Minn. R. [2]860.4400, subp. G."). Consistent with its approach to this litigation, Newpaper has alleged nine separate violations of subsection (G). Many of these allegations restate previous theories of liability.

Six of the alleged violations fail to identify any standard of conduct whatsoever, let alone identify how the alleged standard is unreasonable. See Compl. ¶¶ 84(3)(c) (failing to provide adequate compensation for internet sales); 84(3)(d) (directing Ad Fund monies to promotion of "www.partycity.com"; 84(3)(e) (alleged misrepresentation regarding share of internet sales profits); 84(3)(f) (alleged misrepresentation of expected profitability of internet sales); 84(3)(i) (ceasing to develop Party City franchise); 84(3)(j) (underpricing Newpaper through internet sales). These theories are dismissed.

The remaining three allegations concern the availability of products: (1) Defendants required Newpaper to advertise products and then failed to make these products available; (2) Defendants directed Newpaper to purchase products through Amscan Bypass; and (3) Defendants limited the products available or otherwise made it difficult for Newpaper to sell non-Amscan products. Compl. ¶¶ 84(3)(a), (b), (h). These allegations do not concern "standards of conduct" imposed on Newpaper so much as they accuse Defendants of frustrating Newpaper's ability to perform the Franchise Agreement. Thus, these claims have already been addressed

under Newpaper's good faith and fair dealing count, and are dismissed here.[5]

### E. Promissory Estoppel

Finally, Newpaper alleges that in their April 15, 2010 email, Defendants "promised" Newpaper would receive a revenue share of more than 20% of internet sales based on a formula stated in the Internet Addendum. In the email, Defendants wrote, "the revenue share that Franchisees would earn <u>is expected to be in excess of 20% of sales</u>." Compl. Ex. D (emphasis original). Newpaper alleges it entered into the Internet Addendum based on this "promise." When the first internet sales proved to be lower than expected, Newpaper received "around 11%" of sales based on the revenue share formula. Compl. ¶¶ 88-90. Newpaper now seeks the full 20% of gross internet sales.

This claim is dismissed. A projection regarding anticipated revenue is not a "clear and definite promise" of the kind needed to enforce a claim of promissory estoppel. <u>Martens v. Minn. Mining & Mfg. Co.</u>, 616 N.W.2d 732, 746 (Minn. 2000); <u>see also</u> <u>City of St. Joseph, Mo. v. Sw. Bell Tel.</u>, 439 F.3d 468, 477 (8th Cir. 2006) ("A supposed promise that is wholly illusory or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance.") (quotation omitted). Even if the email statement was a definite promise, promissory estoppel is only available in the absence of a valid contract. <u>Grouse v. Grp. Health Plan, Inc.</u>, 306 N.W.2d 114, 116 (Minn. 1981). Here, the Internet Addendum controls revenue sharing between the parties, and promissory estoppel may not be used to alter its terms. <u>Banbury v. Omnitrition Int'l, Inc.</u>, 533 N.W.2d 876, 880-81 (Minn. Ct.

---

[5] As discussed, Defendants have conceded the viability of Newpaper's good faith and fair dealing claim regarding the failure to ship advertised products. <u>See</u> Defs.' Mem. at 6; Compl. ¶ 80(4).

App. 1995) ("A party cannot use the doctrine of promissory estoppel to alter a contract by using evidence that is barred by the parol evidence rule.").

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Party City Corporation and Amscan Holdings, Inc.'s Partial Motion to Dismiss Plaintiff's Amended and Second Supplemental Complaint [Docket No. 51] is **GRANTED** in part and **DENIED** in part.

2. Defendants have conceded the viability of five claims at issue, and the Court has recognized one additional claim, discrimination under the Minnesota Franchise Act, as viable herein.  All remaining claims in the Amended and Second Supplemental Complaint [Docket No. 50] are **DISMISSED WITH PREJUDICE**.

BY THE COURT:


　　　s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 1, 2014.